CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 21 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DOUGLAS W. HUFF, )
)
    Plaintiff, ) Civil Action No. 7:18CV00054
)
v. ) **MEMORANDUM OPINION**
)
NANCY A. BERRYHILL, Acting ) By: Hon. Glen E. Conrad
Commissioner of Social Security, ) Senior United States District Judge
)
    Defendant. )

    Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

    The plaintiff, Douglas W. Huff, was born on June 11, 1968, and completed the seventh grade. (Tr. 89). Mr. Huff has previously worked as an auto body repairer and painter, spot welder, wiring electrician, sheet metal production employee, and fabricator. (Tr. 22). He last worked on a regular and sustained basis in 2008. (Tr. 367, 399). On September 25, 2013, Mr. Huff filed applications for disability insurance benefits and supplemental security income benefits. In filing his current claims, Mr. Huff alleged that he became disabled for all forms of substantial gainful employment on February 10, 2008, due to lower back pain, left leg pain and numbness, a

learning disability, high blood pressure, and depression. (Tr. 361, 411). At the time of an administrative hearing on April 5, 2016, the plaintiff amended his applications so as to reflect an alleged disability onset date of July 17, 2012. (Tr. 86). Mr. Huff now maintains that he has remained disabled to the present time. With respect to his application for disability insurance benefits, the record reveals that Mr. Huff met the insured status requirements of the Act through the fourth quarter of 2012, but not thereafter. See generally 42 U.S.C. §§ 416(i) and 423(a). Consequently, the plaintiff is entitled to a period of disability and disability insurance benefits only if he has established that he became disabled for all forms of substantial gainful employment on or before his date last insured, December 31, 2012.

Mr. Huff's applications were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated January 3, 2017, the Law Judge also determined, after applying the five-step sequential evaluation process, that Mr. Huff is not disabled. See 20 C.F.R. §§ 404.1520 and 416.920.[1] The Law Judge found that Mr. Huff suffers from several severe impairments, including lumbar degenerative disc disease, hypertension, headaches, depression, anxiety, cognitive disorder, borderline intellectual functioning, and polysubstance abuse disorder, but that these impairments do not, either individually or in combination, meet or medically equal the requirements of a listed impairment. (Tr. 14). The Law Judge then assessed Mr. Huff's residual functional capacity as follows:

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work in the national economy. 20 C.F.R. §§ 404.1520 and 416.920. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

2

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b), except he can stand or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. However, the claimant cannot perform these activities for more than 30 minutes at a time and requires the ability to sit or stand at will. The claimant can occasionally balance, stoop, crouch, crawl, and climb ramps and stairs, but he can never climb ladders, ropes, or scaffolds. He can occasionally operate foot controls with his left lower extremity and frequently with his right lower extremity. Furthermore, the claimant can frequently handle or finger objects but should avoid concentrated exposure to extreme temperatures, vibrations, and workplace hazards. He is also limited to simple, routine, and repetitive tasks in a low-stress environment (defined as having only occasional decision making or changes in the work setting) with only occasional interaction with the public or co-workers.

(Tr. 16). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Mr. Huff is unable to perform any of his past relevant work. (Tr. 22). However, the Law Judge found that Mr. Huff retains sufficient functional capacity to perform other work roles existing in significant number in the national economy. (Tr. 23). Accordingly, the Law Judge concluded that Mr. Huff is not disabled, and that he is not entitled to benefits under either federal program. See generally 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Huff has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3)

subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

On appeal, Mr. Huff raises several arguments, including that the Law Judge erred in assessing his mental residual functional capacity and presented a legally insufficient hypothetical to the vocational expert. After reviewing the record and considering the parties' arguments, the court finds "good cause" to remand the case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g).

The record reveals that Mr. Huff has emotional and cognitive impairments that significantly affect his ability to function. He received special education services in school and only completed the seventh grade. (Tr. 71, 89). In 2010, Mr. Huff underwent a consultative psychological evaluation in connection with a prior application for benefits, which included intelligence and achievement testing. Based on the test results, the consultative psychologist opined that plaintiff has borderline intellectual functioning and learning disabilities in reading, spelling, and arithmetic. (Tr. 373). The psychologist also diagnosed Mr. Huff with major depressive order of moderate intensity and polysubstance dependence and abuse. (Tr. 373). Mr. Huff has since been treated for anxiety and depression by his primary care physician, Dr. Laura Cieraszynski. (Tr. 835, 880). In 2015, Dr. Cieraszynski referred plaintiff to Carilion Clinic Roanoke Neurology for a consultative examination. An MRI of the brain showed "areas of increased T2 signals in the deep cerebral white matter." (Tr. 786). The neurologist referred Mr. Huff to Dr. Ann Sollinger for a neuropsychological evaluation. Dr. Sollinger diagnosed plaintiff with a cognitive disorder and a depressive disorder. (Tr. 902). She subsequently noted that

4

plaintiff's symptoms of depression and psychological distress "may interfere with cognitive functioning on a daily basis." (Tr. 916).

A state agency psychologist, Dr. Julie Jennings, completed two forms regarding plaintiff's mental health: a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form. On the first form, Dr. Jennings noted that plaintiff has moderate difficulties in maintaining concentration, persistence or pace. (Tr. 140). On the second form, Dr. Jennings opined that Mr. Huff has moderate limitations in the category of "sustained concentration and persistence." (Tr. 146). More specifically, Dr. Jennings noted that Mr. Huff's ability to maintain attention and concentration for extended periods is moderately limited, as is his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 146). Consistent with Dr. Jennings' assessment, the Law Judge found at step three of the sequential evaluation process that plaintiff's impairments result in "moderate difficulties" with "concentration, persistence, or pace." (Tr. 15).

In assessing plaintiff's residual functional capacity ("RFC"), the Law Judge indicated that he had given "great weight" to Dr. Jennings' opinions. (Tr. 20). However, the Law Judge did not expressly reference plaintiff's "moderate" limitations in concentration, persistence, and pace in the RFC assessment or the hypothetical question posed to the vocational expert. Instead, the Law Judge limited Mr. Huff to "simple, routine, and repetitive tasks in a low-stress environment" with "only occasional interaction with the public or co-workers." (Tr. 16).

In the court's view, the difficulty with the Law Judge's evaluation of Mr. Huff's emotional and cognitive impairments is two-fold. First, the Law Judge's opinion appears to correlate an ability to perform simple tasks with the ability to maintain concentration, persistence, and pace.

5

On page 9 of his opinion, the Law Judge summarily states, without explanation, that he accounted for any non-exertional restrictions "by formulating the residual functional capacity above, which limits the claimant to simple, unskilled, and less than light work." (Tr. 19). The court agrees with the plaintiff that the Law Judge's conclusory analysis conflicts with the decision of the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). In Mascio, the Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." 780 F.3d at 638. Thus, merely limiting a claimant to unskilled work, without any further explanation, is insufficient under Mascio. See id. ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity . . . . But because the ALJ here gave no explanation, a remand is in order."); see also Perry v. Berryhill, No. 18-1076, 2019 U.S. App. LEXIS 6969, at *8 (4th Cir. Mar. 8, 2019) ("The missing explanation in this case is particularly important because it is undisputed that Perry's stroke left him with limitations in concentration, persistence, and pace. And those limitations, as we have held, are not accounted for adequately by the portion of the ALJ's assessment that restricts Perry to 'unskilled work.'") (citing Mascio supra).

Although the Law Judge also restricted Mr. Huff to "low-stress" work with "only occasional interaction with the public or co-workers" (Tr. 16), the Law Judge failed to explain how these additional limitations sufficiently accommodate plaintiff's moderate difficulties with concentration, persistence, and pace. See, e.g., Julia B. v. Berryhill, No. 7:17-cv-00508, 2019 U.S. Dist. LEXIS 46098, at *20 (W.D. Va. Jan. 2, 2019), report and recommendation adopted, 2019 U.S. Dist. LEXIS 45614 (W.D. Va. Mar. 20, 2019) (concluding that remand was required

6

under Mascio where the Law Judge failed to explain how "a limitation to low-stress work sufficiently accommodates [the plaintiff's] moderate difficulty with concentration, persistence, or pace"). Indeed, the Law Judge said nothing about Mr. Huff's ability to perform job-related functions for a full workday—"a benchmark established by the Administration's own regulations." Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019) (citations omitted). Based on these deficiencies in the assessment of plaintiff's residual functional capacity, the court concludes that remand is required. See id.

For similar reasons, the court is also unable to conclude that the Law Judge presented a legally sufficient hypothetical to the vocational expert. While the Law Judge adopted the vocational expert's opinion that plaintiff can perform production-oriented work as an assembler, packer, or inspector, the vocational expert was not asked to consider the significance of moderate limitations in concentration, persistence, or pace in the performance of such jobs, all of which would seemingly require attendance to task. Nevertheless, the Law Judge relied on the testimony of the vocational expert in determining that there are jobs existing in significant numbers in the national economy which Mr. Huff can perform.

In Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989), the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.

Id. at 50 (citations omitted).

In his opinion, the Law Judge did not offer any specific rationale for omitting moderate limitations in concentration, persistence, or pace from the hypothetical question propounded to the vocational expert. The court is unable to conclude that the hypothetical question posed by the Law Judge, which assumed that plaintiff can perform "simple routine repetitive tasks in a low-stress job," was sufficient to alert the vocational expert to the existence of moderate limitations in concentration, work persistence, and attendance to task. The court believes that consideration of such limitations would be important in assessing a claimant's capacity to perform the jobs identified by the vocational expert. Indeed, in response to additional questions, the vocational expert testified that those very same jobs would no longer be available if the hypothetical individual was distracted from working for at least 25 percent of the workday. (Tr. 79–80).

Moreover, the Fourth Circuit has specifically held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1776, 1180 (11th Cir. 2011)). The court recognizes that Mascio does not stand for the proposition that moderate limitations in concentration, persistence, or pace always translate into a limitation in a claimant's residual functional capacity. Rather, as indicated above, the decision underscores the Law Judge's duty to explain how his residual functional capacity findings adequately account for a claimant's work-related limitations. In this case, the Law Judge did not provide such explanation. Consequently, "a remand is in order." Id.

For the reasons stated, the court finds "good cause" to remand this case to the Commissioner for further development and consideration.[2] If the Commissioner is unable to decide the case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate order of remand will be entered this day.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 31st day of May, 2019.

_____
Senior United States District Judge

---

[2] In light of the court's decision to remand the case to the Commissioner, the court declines to address Mr. Huff's remaining claims of error.